UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| DAVID ELIAL FLORES MARTINES, | Case No. 2:26-cv-00606-ART-MDC |
| Plaintiff,<br>v.<br>JOHN MATTOS, *et al.,*<br>Defendants. | ORDER ON AMENDED PETITION FOR WRIT OF HABEAS CORPUS (ECF No. 9) |

Before the Court is Petitioner David Elial Flores Martines's amended petition for habeas corpus, seeking release or a bond hearing on the basis that he is not lawfully subject to mandatory detention under 8 U.S.C. § 1225(b)(2) or § 1226(c)(1)(E) (the "Laken Riley Act"). (ECF No. 9.) Also before the Court is Respondents' motion to dismiss for lack of subject matter jurisdiction. (ECF No. 11.) On May 14, 2026, the Court held oral argument on this matter. The Court now grants the amended petition with respect to Mr. Flores Martines's request for a bond hearing.

## I.    Background

Mr. Flores Martines, a citizen of Honduras, entered into the United States as an unaccompanied minor on or around July 8, 2023, through El Paso, Texas. (ECF No. 9 at 5.) He was subsequently taken to Port Saint Lucie, Florida, where the Office of Refugee Resettlement released him to the care of his aunt, who agreed to be his sponsor. (*Id.*)

On December 28, 2025, Mr. Flores Martines was arrested in Salt Lake County, Utah, for several offenses, including theft. (ECF No. 20-3.) The record shows that on January 7, 2026, he was released without being charged. (*Id.*) The next day, Mr. Flores Martines was taken into Immigration and Customs Enforcement (ICE) custody and placed into removal proceedings. (*Id.;* ECF No. 9-

1.)

On February 23, 2026, during his removal proceeding, Mr. Flores Martines repeatedly requested a bond hearing. (ECF No. 13 at 4.) He was told by the immigration judge (IJ") that he was not entitled to a bond hearing under the Laken Riley Act because of his theft arrest. (*Id.*)

## II.    Legal Standard

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

## III.    Analysis

### A. Jurisdiction

The Court has jurisdiction over Mr. Flores Martines's case under 28 U.S.C. § 2441, regardless of the jurisdiction-stripping provisions of 8 U.S.C. §§ 1252(g) and 1252(b)(9). Neither of those rules deprive district courts of jurisdiction to hear challenges to confinement, as distinct from challenges to removal and actions taken in furtherance of a removal proceeding.

First, the Supreme Court has limited the reach of § 1252(g). That section

2

deprives courts of jurisdiction to review "any cause or claim by or on behalf of an alien arising from the decision or action by the Attorney General to [1] commence proceedings, [2] adjudicate cases, or [3] execute removal orders against any alien under this chapter." The Supreme Court has named these factors the "three discrete events along the road to deportation." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999). Petitioner challenges the lawfulness of his detention only, and detention is not one of the three events. A request for a bond hearing is "independent of, and collateral to, the removal process." *Ozturk v. Hyde*, 136 F.4th 382, 397 (2d Cir. 2025).

Second, the Supreme Court has rejected the argument that Section 1252(b)(9) is a jurisdictional bar to district court review of immigration detention. That section provides that "judicial review of all questions of law . . . including interpretation and application of statutory provisions . . . arising from any action taken . . . to remove an alien from the United States" is only proper before the appropriate federal court of appeals in the form of a petition for review of a final removal order. *Id.* The Supreme Court has squarely held that Section 1252(b)(9) does not deprive federal courts of jurisdiction to decide whether certain statutory provisions require detention without a bond hearing. *Jennings v. Rodriguez*, 583 U.S. 281, 292 (2018). Once again, "claims challenging the legality of detention pursuant to an immigration detainer are independent of the removal process." *Gonzalez v. U.S. Immig. and Cust. Enf't*, 975 F.3d 788, 810 (9th Cir. 2020); *see Nielsen v. Preap*, 586 U.S. 392, 402 (2019).

### B. Administrative Exhaustion

Respondents also argue that the petition is not ripe and should be dismissed for lack of subject matter jurisdiction because Mr. Flores Martines, allegedly, has not requested a bond hearing. (ECF Nos. 10; 11.)

In the context of habeas corpus claims, exhaustion of administrative remedies is a prudential requirement rather than a jurisdictional one, as it is not

explicitly required by statute. *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). A court may require prudential exhaustion if: "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007). Courts may however waive prudential exhaustion if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004). Mr. Flores Martines bears the burden of demonstrating at least one of the *Laing* factors applies. *See Ortega-Rangel v. Sessions*, 313 F. Supp. 3d 993, 1003 (N.D. Cal. 2018).

Mr. Flores Martines's challenge falls squarely into the futility exception to prudential exhaustion. As Respondents do not dispute, Mr. Flores Martines orally requested a bond hearing during his removal proceeding. (ECF No. 13 at 4.) The immigration judge told Mr. Flores Martines that he lacked jurisdiction to order a bond hearing, because Mr. Flores Martines was detained under the Laken Riley Act for his theft offense. (*Id.*) Additionally, Mr. Flores Martines argues that the BIA's adoption of the federal government's new interpretation of 8 U.S.C. § 1225(b)(2) in the *Matter of Hurtado*, 29 I. & N. Dec. 216, 218 (BIA 2025), which held that IJs have no authority to consider bond for any noncitizens who enters the country without inspection, renders any additional bond hearing request futile. The Court agrees and finds that exhaustion would be futile. *See Vasquez-Rodriguez v. Garland*, 7 F.4th 888, 896 (9th Cir. 2021) ("We will excuse a failure to exhaust if it is very likely what [the BIA's] result would have been. Thus, where the agency's position appears already set and recourse to administrative remedies is very likely futile, exhaustion is not required.") (cleaned up).

Irreparable injury would likely result if Mr. Flores Martines was required to wait to secure judicial consideration of his claim. Mr. Flores Martines has been detained for over four months and will continue to suffer irreparable harm each day he is in immigration detention. See *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013) (finding irreparable harm in continued detention of noncitizens who would likely be granted conditional release if afforded a bond hearing); *Hernandez*, 872 F.3d at 995 (recognizing "the irreparable harms imposed on anyone subject to immigration detention."). Accordingly, the Court finds that waiver of the administrative exhaustion requirement is warranted and denies Respondents' motion to dismiss.

### C. Mr. Flores Martines is Not Subject to Mandatory Detention Under Section 1225(b)(2)

Respondents argue that Mr. Flores Martines is subject to mandatory detention under 8 U.S.C. § 1225(b)(2) of the Immigration and Nationality Act ("INA") because he was present in the United States without being admitted or paroled. (ECF No. 10 at 3 6.) Based on the statutory text as construed by numerous courts that have addressed this issue, the Court concludes that Section 1225 does not apply to Mr. Flores Martines, who has been in this country for three years.

The first question is whether Section 1225 applies to all noncitizens in the United States who entered without inspection, or if those who, like Mr. Flores Martines, have been present for many years, are exempt. The statute's construction depends on its ordinary meaning, its text read in conjunction with Section 1226, and its interpretation by Article III courts, including the Ninth Circuit and the Supreme Court. All these sources show that Section 1225 has a "limited temporal focus" and mandates detention of those who are arriving or have recently arrived in the United States. *Maldonado Vazquez v. Feeley*, No. 2:25-CV-01542-RFB-EJY, 2025 WL 2676082, at *11-16 (D. Nev. Sept. 17, 2025).

As the Supreme Court made clear in *Jennings v. Rodriguez*, 583 U.S. 281 (2018), Section 1225 applies exclusively to recent arrivals at the border and Section 1226 applies exclusively to those already present in the United States. In *Jennings*, the Supreme Court explained that Section 1225's mandatory detention provision is part of the immigration process which "generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible," and that the statute "authorizes the Government to detain certain aliens seeking admission into the country." *Id.* at 287, 289. Section 1225 deals with the process of arrival in the United States, including "inspection by immigration officers" of "applicants for admission" and stowaways; "expedited removal of inadmissible arriving aliens;" and "referral for hearing" of those individuals to whom the section otherwise applies. 8 U.S.C. §1225. By contrast, Section 1226 deals with the "apprehension and detention of aliens" who have passed through the border or a port of entry. 8 U.S.C. § 1226. The Court noted that Section 1226's discretionary detention provision "authorizes the Government to detain certain aliens already in the country," calling it a "default rule" that applies to those "already present in the United States." *Jennings*, 583 U.S. at 289, 303; *see also Nielsen*, 586 U.S. at 396–97 (holding that Section 1226(a) applies to most people who are "present in this country" and removable); *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1081 (9th Cir. 2015) ("[P]ermissive and mandatory detention are in harmony, as they apply to different situations").

Section 1225 detains a subset of noncitizens who meet the definition of an "applicant for admission." Focusing more narrowly on that statutory term, controlling and persuasive authorities have held that those who have been in the United States for many years are not applicants for admission. The Ninth Circuit has held that "an immigrant submits an 'application for admission' at a distinct point in time" and "stretching the phrase" to continue "potentially for years or

decades" "would push the statutory text beyond its breaking point." *U.S. v. Gambino-Ruiz*, 91 F.4th 981, 988-89 (9th Cir. 2024) (citing *Torres v. Barr*, 976 F.3d 918, 922-26 (9th Cir. 2020) (en banc)). Numerous district courts have taken the same approach. *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 489 (S.D.N.Y. 2025); *Escobar Salgado v. Mattos*, No. 2:25-CV-01872-RFB-EJY, 2025 WL 3205356, at *15 (D. Nev. Nov. 17, 2025); *Maldonado Vazquez*, 2025 WL 2676082, at *13; *Rusu v. Noem*, No. 25 C 13819, 2025 WL 3240911, at *5 (N.D. Ill. Nov. 20, 2025) (seeking admission "would most logically occur at the border upon inspection"); *Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3289861, at *9 (C.D. Cal. Nov. 20, 2025) ("Individuals who are present in the United States and have not been inspected and authorized by immigration officers are merely part of the broadly defined term '[noncitizen]'" and are not "applicants for admission").

Respondents' reading of Section 1225 would render superfluous much of Section 1226, including the Laken Riley Act. *See Hasan v. Crawford*, 800 F. Supp. 3d 641, 656 (E.D. Va. 2025) ("A statute should be construed so that effect is given to all its provisions," and "no part will be inoperative or superfluous, void, or insignificant.") (citing *Corley v. United States*, 556 U.S. 303, 314 (2009)). Construing Section 1225 so expansively would eclipse the discretionary detention available under Section 1226(a). *See, e.g. Lopez Benitez*, 795 F. Supp. 3d at 490; *Bautista*, 2025 WL 3289861, at *11 ("Respondents unacceptably collapse § 1226 into nonexistence under a wide-reaching interpretation of 'applicants for admission'"); *Rusu*, 2025 WL 3240911, at *5; *Helbrum v. Williams Olson*, No. 4:25-CV-00349-SHL-SBJ, 2025 WL 2840273, at *4 (S.D. Iowa Sept. 30, 2025); *Maldonado Vazquez*, 2025 WL 2676082, at *14. If all noncitizens present in the United States without admission were already subject to mandatory detention under Section 1225, discretionary detention under 1226(a) would be limited and there would be no need for mandatory detention under the Laken Riley Act. *See*

*Romero v. Hyde*, 795 F. Supp. 3d 271, 286 (D. Mass. 2025) ("'[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme.'") (quoting *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013)).

In contrast to the above-recited points and authorities, Respondents argue that Section 1225 subjects all noncitizens who are inadmissible for entry without inspection to mandatory detention, regardless of how long they have been in the United States. The vast majority of courts confronting this question have rejected Respondents' interpretation of Section 1225, including its reliance on the Board of Immigration Appeals decision in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 217 (BIA 2025), as contradictory to the plain text of the statute. *See, e.g., Hernandez-Luna v. Noem*, No. 2:25-CV-01818-GMN-EJY, 2025 WL 3102039, at *4 (D. Nev. Nov. 6, 2025): *Veletanga v. Noem*, No. 25-CV-9211 (NSR), 2025 WL 3751865, at *3 (S.D.N.Y. Dec. 26, 2025) (noting that "[a]n abundance of district courts around the country have disagreed with *Matter of Yajure Hurtado*" and granted relief to persons improperly detained under § 1225(b)(2)"); *Vazquez v. Feeley*, No. 2:25-cv-01542-RFB-EJY, 2025 WL 2676082, at *16 (D. Nev. Sept. 17, 2025); *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1261 (W.D. Wash. 2025); *Patel v. Almodovar*, No. 25-cv-15345, 2025 WL 3012323 at *3 (D.N.J. Oct. 28, 2025) (collecting cases).

The Court therefore finds that Mr. Flores Martines is not subject to mandatory detention under § 1225(b)(2).

### D. Mr. Flores Martines is Not Subject to Mandatory Detention Under the Laken Riley Act

Mr. Flores Martines argues that he is also not subject to mandatory detention under the Laken Riley Act because he was never charged with the alleged theft offense. At oral argument, Respondents conceded that Mr. Flores Martines was never charged with the theft offense, but argued that his arrest is

enough to subject him to mandatory detention under the Laken Riley Act.

The issue is whether the Laken Riley Act mandates detention if charges were never filed. On January 7, 2026, Mr. Flores Martines was released without being charged for the theft offense. (ECF No. 20-3.) On January 8, 2026, he was transferred into ICE custody and DHS charged him with entry without inspection. (ECF No. 10-1 at 2 (citing 8 U.S.C. § 1182(a)(6)(A)(i)).) After Mr. Flores Martines had been detained for over a month, an IJ determined that he was not entitled to a bond hearing under the Laken Riley Act. Mr. Flores Martines argues that the Immigration Judge misapplied the statute.

The plain language of the Laken Riley Act supports Mr. Flores Martines's argument. In relevant part, the Laken Riley Act mandates detention of a noncitizen who has entered without inspection and "is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of… any crime that results in… serious bodily injury to another person." 8 U.S.C. § 1226(c)(1)(E). The text is in the present tense, requiring detention if the immigrant "is" charged with a qualifying crime. See 8 U.S.C. § 1226(c)(1)(E). The plain, natural reading of this phrase is that a person must be detained if their criminal charges are pending. *See Stanley v. City of Sanford*, 145 S. Ct. 2058, 2063 (2025) ("'[T]o ascertain a statute's temporal reach,' this Court has 'frequently looked to Congress' choice of verb tense.'") (quoting *Carr v. United States*, 560 U.S. 438, 448 (2010)).

Respondents argue that Mr. Flores Martines is subject to mandatory detention because he "was" arrested for a qualifying offense, even though charges were never brought. This expansive reading of the Laken Riley Act would render it superfluous on its own terms, "thus violating one of the 'most basic interpretive canons' of statutory interpretation." *Helbrum*, 2025 WL 2840273, at *6 (citing *Corley*, 556 U.S. at 314). In addition to mandating the detention of those who are arrested for a qualifying crime, the Laken Riley Act mandates the detention of

some noncitizens who are "charged with" a qualifying crime. If anyone who "was" arrested for a crime in the past is subject to mandatory detention regardless of the outcome of the case, the "charged with" and "convicted of" language would add nothing. The Act tracks the phases of the criminal process from arrest and charge; to conviction or other admission of guilt, using present tense at each stage. *Id.* Thus, the better interpretation of the Laken Riley Act is that it requires mandatory detention while someone remains in the criminal process (e.g., "is" arrested) and no longer requires it if/when the local law enforcement entity decides not to bring charges. *Id.*

Where, as here, criminal charges were never brought, the Laken Riley Act no longer applies. *Id.* Because the local government entity decided not to bring charges against Mr. Flores Martines before the IJ held that he was not entitled to a bond hearing, the IJ erred in interpreting the Laken Riley Act and Mr. Flores Martines is entitled to a bond hearing under Section 1226(a).

### E. The Government Bears the Burden of Proving that Mr. Flores Martines's Detention is Warranted

Respondents briefly argue that Mr. Flores Martines bears the burden of establishing that release is warranted, in a bond hearing before an IJ. (ECF No. 10 at 7.) However, numerous courts have held that the burden is on the Government to establish whether detention is justified. *See e.g., Luis Enrique Andrade v. John Mattos*, No. 2:26-CV-00156-RFB-MDC, 2026 WL 969289, at *3 (D. Nev. Apr. 9, 2026) ("[T]he Court orders Respondents to conduct a bond hearing for Petitioner under § 1226(a), and its implementing regulations, wherein the government must prove, by clear and convincing evidence, that Petitioner's civil detention is justified by an individualized, constitutionally recognized interest—e.g., that his detention is necessary to prevent danger to the community or to ensure his future appearance at removal proceedings."); *Juan Carlos Nava Meza v. John Mattos*, No. 2:26-CV-00957-RFB-BNW, 2026 WL 969307, at *3 (D.

Nev. Apr. 9, 2026); *Lima v. Wofford*, No. 1:25-CV-01390-SKO (HC), 2025 WL 3535009, at *4 (E.D. Cal. Dec. 10, 2025); *Arostegui-Maldonado v. Baltazar*, 794 F. Supp. 3d 926, 944 (D. Colo. 2025) ("[T]he Supreme Court has long held that the clear and convincing evidence standard applies to civil detention . . . . The Court sees no compelling reason why a lesser standard should apply in [the immigration detention] context." (internal citation omitted)).

Additionally, while the Ninth Circuit ruled that the Government does not bear the burden in a *second* bond hearing held under Section 1226(a), the Ninth Circuit subsequently endorsed requiring the Government to prove by clear and convincing evidence that noncitizens are a danger to the community or a flight risk, in an *initial* bond hearing. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1203 (9th Cir. 2022); *Martinez v. Clark*, 124 F.4th 775, 785 (9th Cir. 2024) ("[T]he BIA properly noted that the government bore the burden to establish by clear and convincing evidence that [a detained noncitizen] is a danger to the community" in the context of prolonged detention under 8 U.S.C. § 1226(c)).

Accordingly, Respondents are required to provide Mr. Flores Martines with an individualized bond hearing, under 8 U.S.C. § 1226(a), by Tuesday, May 26, 2026, wherein Respondents must establish by clear and convincing evidence that Mr. Flores Martines is a flight risk or a danger to the public, or otherwise release him from custody.

## IV.   Conclusion

IT IS THEREFORE ORDERED that Mr. Flores Martines's writ of habeas corpus (ECF No. 9) is GRANTED with respect to his request for a bond hearing.

IT IS FURTHER ORDERED that Respondents shall provide Mr. Flores Martines with an individualized bond hearing before an immigration judge, pursuant to 8 U.S.C. § 1226(a), by Tuesday, May 26, 2026, wherein the Government must establish by clear and convincing evidence that Mr. Flores Martines is a flight risk or danger to the public. If a bond hearing is not provided

by May 26, 2026, Mr. Flores Martines is to be released from custody, and upon release, should Respondent seek to re-detain Mr. Flores Martines, it must provide no less than seven (7) days' notice to him and must hold a pre-deprivation bond hearing before a neutral arbiter wherein the Government must establish by clear and convincing evidence that Mr. Flores Martines is a flight risk or danger to the public and at which his eligibility for bond must be considered.

IT IS FURTHER ORDERED that Respondents must file a Notice of Compliance within ten (10) days of providing Mr. Flores Martines with a bond determination hearing.

IT IS FURTHER ORDERED that Respondents' motion to dismiss (ECF No. 11) is DENIED.

IT IS FURTHER ORDERED that Respondent John Mattos's motion for leave to appear telephonically (ECF No. 19) is GRANTED *nunc pro tunc.*

Dated this 15th day of May 2026.

ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE

12